## OTTINGER et al. v. UNITED STATES.

No. 49102.

United States Court of Claims.
March 6, 1950.

Walter D. Hanson, Oklahoma City, Okl., for plaintiffs. Watters, Cowen & Baldridge, Washington, D. C., and Rittenhouse, Webster, Hanson & Rittenhouse, Oklahoma, City, Okl., were on the brief.

Gaines V. Palmes, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for defendant.

Before JONES, Chief Judge, and MADDEN, LITTLETON, WHITAKER, and HOWELL, Judges.

MADDEN, Judge.

The Government has demurred to the plaintiffs' petition. We must, therefore, determine whether, assuming the truth of the plaintiffs' allegations, they state a cause of action. We first summarize the allegations.

On September 22, 1943, December 6, 1943, January 3, 1944, and February 29, 1944, the plaintiffs made four separate contracts with the Government which acted

through the District Engineer, U. S. Engineer Office, Tulsa, Oklahoma, for the construction of certain levee work. The area in which this work was to be performed had been designated as a critical labor area and all labor was required to be furnished by referral from the War Manpower Commission and the United States Employment Service. Shortly after the award of each of the contracts, the Tulsa Alliance of Building Trades, which was a central organization of labor unions, filed a statement with the Area Director of the War Manpower Commission to the effect that a labor dispute existed in connection with the plaintiffs' work. In fact there was no such labor dispute, except that the unions connected with the Alliance desired that the plaintiffs should operate under a closed shop and the Alliance filed its statement for the purpose of coercing the plaintiffs to so operate.

Without investigation, and over the protests of plaintiffs, the War Manpower Commission ruled that a labor dispute existed, and it refused to certify any workmen to the plaintiffs' job, pending settlement of the dispute. The case was referred to the National War Labor Board, which in turn referred it to the Wage Adjustment Board. The Wage Adjustment Board advised the War Manpower Commission that its referral of workmen to the plaintiffs in the meantime would not interfere with the Wage Adjustment Board's consideration of the case. The Commission persisted, however, in refusing to refer any workmen to the plaintiffs.

The plaintiffs were obliged to perform their work with a force of laborers insufficient in number and unskilled for the work. Normal efficiency could not be maintained and the work could not be completed in the customary working time. Large financial losses to the plaintiffs resulted from the insufficiency and incompetence of their labor force.

The plaintiffs allege that the action of the Government agencies was arbitrary and capricious, and constituted an unreasonable interference with the plaintiffs in the performance of their contracts.

The plaintiffs appealed to the "Board of Contract Appeals," which denied the appeal for want of jurisdiction. In the instant suit the plaintiffs ask for damages in various amounts in respect to each of their four contracts.

The asserted ground for the Government's demurrer is that the United States cannot be held liable, as for a breach of contract, for the consequences of its public acts as a sovereign. The doctrine is well settled. Horowitz v. United States, 267 U.S. 458, 45 S.Ct. 344, 69 L. Ed. 736; Deming v. United States, 1 Ct. Cl. 190; Jones v. United States, 1 Ct.Cl. 383; Clemmer Construction Co., Inc., v. United States, 71 F.Supp. 917, 108 Ct.Cl. 718; Froemming Brothers, Inc., v. United States, 70 F.Supp. 126, 108 Ct.Cl. 193. Our question is whether it is applicable to the case in hand.

If the contracts here in question had been between private parties, there would be no doubt that an interference by one of them with the performance by the other, comparable to the Government's alleged interference with the plaintiffs' performance, would be a breach of contract. The Government's asserted defense, then, is in the nature of a confession of a prima facie breach, and an avoidance by reason of its necessary functions as a sovereign. We have tried to restate briefly the *rationale* of the doctrine in the Froemming case, supra, 108 Ct.Cl. at pages 212, 213, 70 F. Supp. at page 127. In the instant case, the Government having assumed the control of manpower by designating certain areas, including the area in question, as critical labor areas, and by requiring that an employer in that area obtain his labor only by referrals from the Government's employment office, impliedly agreed, when it contracted with the plaintiffs for work requiring manpower, that its employment office would treat the plaintiffs considerately and equitably. If some reason of public policy had intervened, requiring that all available manpower be diverted to other work, the plaintiffs, like other employers in the area would have had to yield to the general welfare, and take their losses. In this case the Government asserts

no law or policy pursuant to which workmen were denied to the plaintiffs. So far as appears, there was none. All that appears is that workmen were denied the plaintiffs. The plaintiffs say they were arbitrarily and capriciously denied. In the absence of explanation, that statement seems to be true.

 We think that when agents of the Government, without justification in statute, executive order, administrative discretion or otherwise, engage in conduct which is a violation of an express or implied provision of a Government contract, the mantle of sovereignty does not give the Government immunity from suit. It needs no such immunity in order to be able to go on governing wisely and as circumstances require without being hampered by its outstanding contracts. We think that to treat every act of a Government agent, done in the name of the Government, as an act of sovereignty within the meaning of the doctrine here under discussion would be a retreat, without reason, from the purpose of the statute permitting citizens to sue the United States for breach of contract.

The Government's demurrer is overruled. It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.