**ORLANDO HELICOPTER AIRWAYS, INC., Appellant,**

v.

**Sheila WIDNALL, Secretary of the Air Force, Appellee.**

No. 94–1399.

United States Court of Appeals, Federal Circuit.

March 23, 1995.

Dale C. Nathan, Atty., Eagan, MN, submitted for appellant.

Stephanie E. Jackson, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for appellee (Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Jeanne E. Davidson, Asst. Director, Commercial Litigation Branch, Dept. of Justice, were on the brief), for appellee.

Before NEWMAN, Circuit Judge, BENNETT, Senior Circuit Judge, and RADER, Circuit Judge.

BENNETT, Senior Circuit Judge.

Orlando Helicopter Airways, Inc. (OHA), seeks to recover excess costs it incurred on a firm fixed price contract when the government investigated it for safety violations and fraud. The Armed Services Board of Contract Appeals (Board) held that the sovereign acts doctrine barred recovery of costs which stemmed from the government's criminal investigation, but that OHA might still recover costs for changes the contracting officer imposed. *Orlando Helicopter Airways, Inc.,* ASBCA No. 45778, 94–2 BCA ¶ 26,751, at

133,080. Because the Board did not err in exercising jurisdiction over this contract claim or in granting partial summary judgment on the sovereign acts affirmative defense, we affirm.

## BACKGROUND

On May 14, 1987, the U.S. Army Missile Command (MICOM) awarded OHA a letter contract to produce fifteen working helicopter replicas. A firm fixed price contract superseded that letter contract on May 2, 1988. In October 1989, a whistle-blower accused OHA of flight safety violations and fraud in performing its contract. That accusation prompted the Defense Criminal Investigative Service and the Department of Justice to open a criminal investigation of OHA in late 1989. The criminal investigation closed in May 1992, when the U.S. attorney declined to bring charges. While those agencies pursued that investigation, the contracting officer independently issued a stop work order on February 21, 1990, and directed OHA to provide a detailed response to the whistle-blower's accusations. The contracting officer also participated in a technical review conducted between February 26, 1990, and March 1, 1990. The contracting officer allowed OHA to resume production on March 6, 1990, subject to certain conditions. On May 3, 1991, OHA submitted a claim for $10,722 to the contracting officer for costs incurred due to the stop work order and technical review. On June 26, 1991, the contracting officer denied that claim, but the decision letter omitted the notice of appeal rights required by the Contracts Disputes Act. 41 U.S.C. § 605(a) (1988 & Supp. V 1993), *amended by* Federal Acquisition Streamlining Act of 1994, Pub.L. No. 103–355, §§ 2351, 605(a), 108 Stat. 3243, 3322 (1994); 48 C.F.R. § 33.211(4)(v) (1994). OHA did not further pursue that claim.

On September 15, 1992, OHA submitted a claim for $945,310 for costs and expenses "related to the investigation of fraud charges." In a December 3, 1992, decision the contracting officer denied the claim because OHA asserted entitlement under a cost accounting provision applicable only to cost reimbursement contracts, not to firm fixed

price contracts like OHA's. OHA then amended its claim to predicate entitlement on the Changes clause. The contracting officer denied that claim in a final decision dated January 20, 1993. On February 26, 1993, the contractor filed its notice of appeal to the Board. The government moved for summary judgment before the Board. The Board held that law enforcement investigations not initiated by the contracting officer are sovereign acts, and therefore granted the government's motion with respect to costs incurred in responding to the criminal investigation. However, the Board also held that the costs incurred due to the stop work order and the technical review might be recoverable under the Changes clause, and therefore denied the government's motion as to those costs. On July 6, 1994, the contractor filed its notice of appeal with this court.

## ANALYSIS

■ As an initial matter, the court raises sua sponte the question of its own jurisdiction. *See Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.1993) (observing that an inquiry into jurisdiction is always timely). Pursuant to our jurisdictional statute, we review a decision of a Board of Contract Appeals only if that decision is final. 28 U.S.C. § 1295(a)(10) (1988 & Supp. V 1993); *Garrett v. General Elec. Co.,* 987 F.2d 747, 751 (Fed.Cir.1993); *Fairchild Republic Co. v. United States,* 810 F.2d 1123, 1125 (Fed.Cir. 1987). This doctrine of finality embodies the policy of avoiding piecemeal litigation and the delays attendant upon appellate review of nonfinal decisions. *Teller Environmental Sys. v. United States,* 802 F.2d 1385, 1388 (Fed.Cir.1986). The requirement of a final decision compels a party to raise all assignments of error in one appeal. The rule preserves the respect due administrative judges at the Board by minimizing appellate interference with their function. It deters litigants from harassing opponents and clogging the courts with expensive and time-consuming appeals. It is crucial to the efficient administration of justice. *See, e.g., Flanagan v. United States,* 465 U.S. 259, 263–64, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984); *Teledyne Continental Motors v. United States,* 906 F.2d 1579, 1581–82 (Fed.

Cir.1990); *Fairchild,* 810 F.2d at 1125. Nevertheless, we do not impose on Board decisions a strict finality requirement in exact congruence with that imposed on district court decisions. *General Motors Corp. v. Aspin,* 24 F.3d 1376, 1380 (Fed.Cir.1994); *Garrett,* 987 F.2d at 751; *Dewey Electronics Corp. v. United States,* 803 F.2d 650, 654 (Fed.Cir.1986).

At oral argument, the government contended that this court could exercise jurisdiction under the principles set forth in *Dewey.* There the contracting officer denied entitlement on nine claims without considering quantum. *Dewey,* 803 F.2d at 652–53 & n. 2. On four of those claims the Board upheld the contracting officer, but on five it disagreed and remanded to the parties to negotiate quantum. *Id.* at 653. The contractor appealed to this court the four claims on which it had lost. This court asserted jurisdiction without awaiting a determination of quantum in the five claims not on appeal. *Id.* at 658. *Dewey,* however, is not on all fours with this case, because that case included multiple claims whereas this case contains only one. In the case at bar, the notice of appeal to the Board stated that OHA appealed from the contracting officer's decisions of December 3, 1992, and January 22, 1993. Both of those decisions were entered on the single claim for $945,300 submitted September 15, 1992. The notice of appeal did not mention the contracting officer's decision dated June 26, 1991, which denied the $10,722 claim submitted May 3, 1991. The Board's decision on the contractor's sole claim essentially granted partial summary judgment on those elements of cost that stemmed from the criminal investigation.

■ Some language at the end of the Board decision seems to identify two distinct claims. There, the Board summarized:

The motion is granted in part and the appeal is denied as to the claim for the costs of responding to the [criminal] investigation. The motion is denied as to the claim for the costs of the stop work order, the request for responses issued with that order, the technical review, and the documentation/part-removal requirements.

*Orlando*, ASBCA No. 45778, 94–2 BCA ¶ 26,-751, at 133,080. The Board's characterization of an issue, however, does not determine finality. *Teledyne*, 906 F.2d at 1583; *Dewey*, 803 F.2d at 654. The notice of appeal shows that only one claim was before the Board. Moreover, we take judicial notice that in a subsequent decision in this same case the Board determined that costs associated with the contracting officer's technical review were included in the $945,300 claim submitted September 15, 1992. *Orlando Helicopter Airways, Inc.*, ASBCA No. 45778, 94–3 BCA ¶ 27,233, at 135,703. After noting that the contracting officer's June 1991 decision failed to include the necessary notice of appeal rights, the Board added:

> Second, the stop work order, technical review and other actions directed by the contracting agency were within the scope of the "activities associated with the [fraud] investigation" for which the 15 September 1992 claim was submitted. A "List of Major Events" in that claim includes the contracting agency's March 1990 technical review, and the claim otherwise includes costs incurred in March 1990 when the only work related to the investigation was the technical review.

*Id.* at 135,703 (alteration in original) (citations omitted). Regardless of whether that subsequent decision is correct, a question not now before us, it is clear that the Board continues to assert jurisdiction over a part of the same claim now on appeal.

■ Because *Dewey* is not dispositive of the jurisdictional question in this case, it is necessary to consider more general principles. To determine whether an administrative decision is final for purposes of appellate review, the court must measure "whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action." *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970); *Dewey*, 803 F.2d at 654. We thus compare the inconvenience and cost of piecemeal review with the danger of denying justice by delay. *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950); *Fairchild*, 810 F.2d at 1126.

■ Apparently the Board has yet to decide whether costs incurred under the stop work order and the technical review are compensable under the Changes clause. However, the sovereign acts defense is an issue wholly separate and distinct from any issues which may remain before the Board. The Board need not, and for aught we can discern did not, delay its adjudication on the remainder of this claim. Now that the case is before us, the eventual costs will be less if we answer the question presented than. if we send the case back with that issue undecided. Thus, our review of this issue will not engender the inconvenience or cost sometimes associated with piecemeal review of trial court decisions. Like the court in *Garrett*, we conclude that on its facts "[t]his case ... does not raise such a specter." *Garrett*, 987 F.2d at 751. Moreover, the delay of a remand would work an injustice by compelling OHA to spend additional time and money prosecuting its claim to the last before the Board in hope of eventually obtaining review of the issue now squarely before us. Because of these considerations, judicial review will not disrupt the orderly process of adjudication. The Board decision did determine the rights and obligations of the parties with respect to the costs incurred in responding to the criminal investigation, which appears to make up the largest part of the total costs. As a legal consequence of that decision, OHA's recovery has been limited to costs associated with the technical review and stop work order. All these factors suggest that the Board's decision is final for purposes of § 1295(a)(10).

Having concluded that the Board's decision is final for purposes of appellate review, we next consider the Board's jurisdiction. The contractor asks us to hold that the Board erred in concluding that it lacked jurisdiction over OHA's claim for excess costs incurred from the criminal investigation. The Board, however, did not gainsay its own jurisdiction. It based its decision on the sovereign acts doctrine, which is an affirmative defense, *see*

*Hughes Communications Galaxy, Inc. v. United States,* 998 F.2d 953, 958 (Fed.Cir. 1993) (noting that the defense is an inherent element of every government contract), and differs from the jurisdictional issue of sovereign immunity. Not only did the Board have jurisdiction, it exercised it.

■ With these jurisdictional questions resolved, we at last consider whether the Board was correct in its decision that the criminal investigation was a sovereign act. The Board's factual findings are entitled to great deference on appeal. 41 U.S.C. § 609(b) (1988 & Supp. V 1993), *amended by* Federal Acquisition Streamlining Act of 1994, Pub.L. No. 103–355, §§ 2354, 609(f), 108 Stat. 3243, 3323 (1994). Conclusions of law, however, receive no such deference. *Id.* This appeal follows from a grant of summary judgment, in which the Board necessarily concluded that there was no genuine dispute over any issue of fact material to the sovereign acts defense.* That conclusion we review de novo.

■ A sovereign act is public and general in nature, not private and contractual. *Horowitz v. United States,* 267 U.S. 458, 461, 45 S.Ct. 344, 69 L.Ed. 736 (1925) (quoting *Jones v. United States,* 1 Ct.Cl. 383, 384–85, 1865 WL 1976 (1865)); *Sun Oil Co. v. United States,* 572 F.2d 786, 817, 215 Ct.Cl. 716 (1978). The determination does not always turn on whether the action was undertaken by a contracting officer. *See, e.g., Sun Oil,* 572 F.2d at 817 (stating that acts by the Secretary of the Interior "were not actions of public and general applicability, but were actions directed principally and primarily at plaintiffs' contractual right"); *Ottinger v. United States,* 116 Ct.Cl. 282, 285, 88 F.Supp. 881 (1950) (holding that actions by the War Manpower Commission could be contractual when not taken pursuant to any general law or policy). The focus of the inquiry is thus the nature of the conduct, not the identity of

the government agent responsible. The instant appeal concerns the government's exercise of police powers in its law enforcement capacity. Such powers are an ancient and fundamental indicia of sovereignty. *See Saudi Arabia v. Nelson,* —— U.S. ——, ——, 113 S.Ct. 1471, 1479 (1993); *Crow Tribe of Indians v. United States,* 284 F.2d 361, 364, 151 Ct.Cl. 281 (1960), *cert. denied,* 366 U.S. 924, 81 S.Ct. 1350, 6 L.Ed.2d 383 (1961). It does not matter whether the particular infraction under investigation happens to transpire during a government contract. A criminal investigation may well interfere with a contract to which the government is not a party. OHA enjoys no advantage over such similarly situated contractors merely because its contract happens to be with the government. Perhaps if the contracting officer initiated and directed the investigation as part of contract administration then a contract claim might arise. *See generally* RESTATEMENT (SECOND) OF CONTRACTS § 251 cmt. e (1979) (stating that demands for assurance of performance must comport with the duty of good faith and fair dealing). There is no dispute, however, as to the fact that the contracting officers did not initiate or control the criminal investigation in this contract. Based on that fact, the Board held the criminal investigation to be a sovereign act. We discern no error in that decision. Moreover, no express or implied provision of the contract obligates the government to pay others for a criminal investigation it undertakes. *Cf. Amino Bros. Co. v. United States,* 372 F.2d 485, 491, 178 Ct.Cl. 515, *cert. denied,* 389 U.S. 846, 88 S.Ct. 98, 19 L.Ed.2d 112 (1967) (noting that the government may assume contractual liability for acts in which it as the sovereign has the right to engage).

The gist of the contractor's argument on appeal is that if a criminal investigation was, in fact, overzealous then the investigation's target should be able to recover its costs in

---

* In resolving procedural matters such as motions for summary judgment, the Boards of Contract Appeals turn to the Federal Rules of Civil Procedure for guidance. *Delfour, Inc.,* VABCA No. 3803, 94–2 BCA ¶ 26,789, at 133,228. The Board will enter summary judgment if the record discloses no genuine issue of material fact. *Id.; see Orlando,* ASBCA No. 45778, 94–2 BCA ¶ 26,-751, at 133,080 (illustrating the application of these principles in this case); *see also* FED. R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

some forum. If any such remedy exists, however, it is only that which any citizen may pursue who is the victim of an overzealous, unprofessional criminal investigation. That claim, if it is a claim, would differ from the claim on appeal because it would not sound in contract. Apparently the contractor has filed a tort claim in the District Court for the Middle District of Florida and the government has moved to dismiss that suit, arguing in part that the claim is for breach of contract and thus not within the district court's jurisdiction. This court is sensitive to the jurisdictional thicket that may sometimes entangle contractors who file claims against the government. We may not, however, advise on the jurisdiction of the district court or speculate as to the existence vel non of a tort claim on the record before us. We simply hold that the Board did not err in exercising jurisdiction over the contract claim here presented, and correctly concluded that the government is entitled to summary judgment as to expenses caused by the criminal investigation.

CONCLUSION

On the particular facts of this case, the Board's grant of partial summary judgment as to the sole claim before it is a final decision for purposes of § 1295(a)(10). The administrative decisionmaking process has reached a stage where judicial review will not disrupt orderly adjudication. The Board properly exercised jurisdiction over a contract claim when it concluded that no genuine issues of material fact precluded summary judgment on the government's sovereign acts affirmative defense, and that the government was entitled to judgment as a matter of law.

*AFFIRMED.*