**COAST FEDERAL BANK, FSB, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–466 C.

United States Court of Federal Claims.

Filed: Feb. 5, 2001.

Issued for Publication: March 26, 2001.

Charles J. Cooper, Washington, DC, for plaintiff. Steven S. Rosenthal, Alan K. Palmer, and Michael W. Kirk, Washington, DC, of counsel.

John N. Kane, Jr., with whom were David W. Ogden, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Department of Justice, Washington, DC, for defendant. William C. Buckhold, F. Jefferson Hughes, William L.

Small, Edward Sullivan, and Jordan Thomas, of counsel.

## ORDER

HEWITT, Judge.

Before the court is Defendant's Motion for Reconsideration and Clarification of the Court's Opinion and Order (Def.Mot.Reconsid.). Defendant requests reconsideration of this court's Opinion and Order of December 28, 2000 (Opinion) on the grounds that (1) the court should have concluded that the "level yield" method of amortization applied to plaintiff's RAP goodwill; (2) summary judgment for defendant on plaintiff's claim to lost profits damages was appropriate; and (3) summary judgment for plaintiff on foreseeability was unwarranted.

Defendant has moved for reconsideration pursuant to Rule 83.2(f) of the United States Court of Federal Claims. Rule 83.2(f) states that "[a] motion for reconsideration of an order shall be filed not later than 10 days after the date thereof." Defendant's motion was filed on January 16, 2001, 19 days after the entry of the Opinion. The motion was not accompanied by a request for leave to file a motion for reconsideration out of time. The court therefore finds the motion untimely. Notwithstanding this untimeliness, the court briefly addresses the issues raised by the motion.

### 1. Level Yield

Defendant requests that the court rule that "level yield" was the required amortization for plaintiff's RAP goodwill. Def. Mot. Reconsid. at 3. Defendant argues that "plaintiff has pleaded, and we have conceded, that the level yield method is the appropriate approach under FASB No. 72." *Id.* The court finds, however, that the required method of amortization has not thus far been adequately briefed. Defendant raised the issue in a footnote in its motion for summary judgment, stating that it was still investigating the question. Defendant's Motion for Summary Judgment on Damages (Def.Mot.) at 17 n. 5. Plaintiff returned to the issue in briefing after the oral argument was held on the parties' cross-motions for summary judg-

ment, arguing that the level yield method was appropriate. Coast's Response to the Government's Surreply (Pl.Surreply) at 9–10. Defendant now argues that level yield was the appropriate method, but contends that the amortization schedule submitted by plaintiff was inaccurate. Def. Mot. Reconsid. at 6–7. Defendant represents that "there are no factual disputes to be resolved" on this issue. *Id.* at 3. The differing amortization schedules suggest to the court, however, that the proper application of the level yield method to plaintiff is still disputed. The court invites the parties, if they do agree on this issue, to stipulate to the proper amortization method, and the resulting schedule, for purposes of further proceedings in this matter.

### 2. Lost Profits

■ Defendant also argues that it should have been granted summary judgment on plaintiff's lost profits claim. Def. Mot. Reconsid. at 7–8. Defendant points out that the "but for" scenario submitted by plaintiff's expert is affected by the court's rulings on plaintiff's claim to "wounded bank" damages and on the duration of plaintiff's capital credit, and argues that, since the model is inconsistent with the court's opinion, the lost profits it projects are no longer plausible. *Id.* at 8–11. The court acknowledged in its opinion that plaintiff would have to revise its assumptions when presenting evidence on lost profits at trial. Opinion at 42 n. 27. To be consistent with the court's order, that revision will acknowledge the amortization of plaintiff's capital credit and assume that deposit costs in the "but for" scenario follow the real world.

Defendant argues that the court should not permit plaintiff to revise its lost profits model. Def. Mot. Reconsid. at 11 n. 5. The court disagrees. Plaintiff has raised a genuine issue of material fact with respect to its lost profits, and should be permitted to present evidence at trial, consistent with the court's opinion, regarding the amount. The court cannot understand why plaintiff should be foreclosed from presenting such evidence simply because its experts' first projection of those lost profits was based on certain as-

sumptions which must be revised in light of the results of the dispositive motions. Defendant's position is inconsistent with and, if adopted, would have the potential to discourage the efficient resolution of disputes in motion practice.

◼ Defendant also argues that, because plaintiff's "but for" scenario is rendered implausible by the court's holdings regarding the scope of the breach, its lost profits claim must fail. Def. Mot. Reconsid. at 11–12. The court addressed this argument directly in its opinion. *See* Opinion at 37–38 ("Defendant argues that the resulting scenario . . . is unrealistic . . . but realism is not the issue here."). It is immaterial whether, for purposes of calculating plaintiff's damages by hypothesizing a "no breach" world that differs from the real world only by eliminating the breach, the resulting scenario is unrealistic. Any scenario that assumes that plaintiff's contract was not breached is in some measure unrealistic, since it assumes away all the events that led to that breach of contract. The "sovereign acts" doctrine requires, however, that the court make a distinction between those actions that were focused on plaintiff's contract and those that can be regarded as "public and general." *Orlando Helicopter Airways, Inc. v. Widnall,* 51 F.3d 258, 262 (Fed.Cir.1995). The proper distinction here, the court believes, is between the breaching provisions as applied to plaintiff and the rest of FIRREA, including the same provisions as applied to other thrifts. The footnote in the opinion in which the court stated that "[w]ith respect to explaining its expectancy damages . . . plaintiff bears the burden of propounding a realistic but-for scenario, and the court will consider in that context whether plaintiff's model, including its non-breaching FIRREA, is plausible," is not to the contrary. Opinion at 38 n. 25. Plaintiff will bear the burden of showing a plausible relationship between the lost profits it claims and the assumptions of its "but for" world; it will be required to demonstrate causation within the model. But it will not be required to demonstrate that it was realistic for the nonbreaching scenario to have happened in the first place.

### 3. Foreseeability

◼ Defendant argues that plaintiff should not have been granted summary judgment on the foreseeability of damages. Def. Mot. Reconsid. at 18–19. Defendant contends that the purpose of the forbearance was "to deal with capital compliance problems resulting from the subject transaction involving Central," rather than to provide a cushion against further losses. *Id.* at 19. The court finds this argument unpersuasive.

The ratio of plaintiff's regulatory capital to assets in the quarter before the acquisition of Central was approximately 7.59%. *See* Appendix to Defendant's Motion for Summary Judgment (Def.App.) v.2 at 1170–71 (reporting $710,309,000 million in regulatory capital and $9,362,433,000 in assets). After the acquisition of Central, the ratio was approximately 9.17%. *See id.* at 1173–74 ($1,017,848,-000 in regulatory capital and $11,096,110,000 in assets). Had the forbearance been granted to plaintiff merely to counteract any capital compliance problems arising from the acquisition of Central, the $299 million in RAP goodwill that FSLIC gave plaintiff would have been excessive. As it was, the forbearance significantly raised the ratio of plaintiff's regulatory capital to its assets, and the court has found that it was foreseeable to defendant that plaintiff would seek to leverage the additional regulatory capital. Opinion at 29–33.

◼ Defendant also contends that plaintiff cannot recover unless the "confluence of circumstances" that contributed to its damages was foreseeable. Def. Mot. Reconsid. at 26. Defendant cites the Restatement of Contracts for this proposition, but the Restatement teaches that the defendant must be able to foresee all of the contributing circumstances, not that the defendant must foresee the convergence of such circumstances. *Restatement (Second) of the Law of Contracts* § 351 cmt. d (1981) ("If several circumstances have contributed to cause a loss, the party in breach is not liable for it unless he had reason to foresee all of them."). The court found that all of the individual circumstances that contributed to plaintiff's damages—including an economic downturn and the tightening of regulatory standards appli-

cable to the thrift industry—were foreseeable. Opinion at 31.

Defendant also argues that plaintiff's 1988 business plan, which projects a decrease in plaintiff's regulatory capital ratio, does not reflect an intention to leverage the capital credit. Def. Mot. Reconsid. at 22–23. It is possible, of course, to construe a decrease in the regulatory capital ratio as leveraging another form of plaintiff's capital and leaving the capital created by the forbearance untouched. Defendant has given the court no reason why it should construe the decrease in that way, however. Since plaintiff announced an intention to increase its overall leverage at a time when it was including the forbearance in its regulatory capital, the court found that it intended to leverage the forbearance. Opinion at 31–32.

Defendant also argues that Mr. Gray's deposition testimony about the consequences of a loss of regulatory capital is not relevant because Mr. Gray believed that the term "capital credit" referred to cash rather than to the accounting treatment of the forbearance. The court addressed this distinction in Mr. Gray's deposition in its opinion, and does not find that reconsideration is warranted. *See* Opinion at 21–22, 29–30. Defendant points to Mr. Gray's statement that the capital credit "was cash," shortly before his discussion of the consequences of losing a capital credit. Def. Mot. Reconsid. at 27. But the question to which Mr. Gray was responding addressed whether "the capital credit would be available to meet whatever capital requirements might come down the road," suggesting that Mr. Gray's statement that "it

was cash" referred to the distinction between an outright grant of cash and a capital instrument that would have to be repaid. Def.App. v.1 at 850. Similarly, Mr. Gray's statement at another point in his deposition that "a capital credit is cash … in addition to some other kind of assistance, which might be some kind of accounting treatment, some kind of forbearance," demonstrates that he understood a capital credit to mean both cash and an accompanying accounting forbearance. *Id.* at 856. Defendant also argues that Mr. Gray's statement that "a huge chunk is taken out from your regulatory capital" when a capital credit is lost refers to cash, since the cash asset must be balanced by a reduction elsewhere on the balance sheet. Def. Mot. Reconsid. at 28. Since the balance sheet equates assets with liabilities plus regulatory capital, however, the reduction elsewhere on the balance sheet could be from liabilities as well as from regulatory capital.

Defendant also argues that Mr. Smuzynski's statement that defendant expected plaintiff to act in accordance with its business plan does not mean that the leveraging was foreseeable at the time of the acquisition, since the 1988 business plan was prepared at the end of 1987 and the acquisition took place in April of 1987. Def. Mot. Reconsid. at 29–30. The court agrees with defendant's observation that the business plan was not available to defendant at the time of contracting, but finds nonetheless that defendant should have foreseen plaintiff's damages.[1] The court notes that, in an internal FHLBB memorandum dated April 21, 1987, defendant acknowledged plaintiff's intention to reduce

---

1. The court also notes that defendant itself cited a different December 1987 document as support for its argument that FHLBB could not have foreseen that plaintiff would leverage the capital credit. *See* Defendant's Reply Memorandum in Support of its Motions for Summary Judgment on Damages and to Dismiss, and in Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment at 97 (stating that plaintiff "never intended to leverage the SM–1 accounting forbearance" and citing plaintiff's "December 1987 Strategic Plan"). In response, plaintiff argued that documents created in December 1987 are not relevant to the determination of what was foreseeable at the time the contract was formed. Plaintiff's Reply Brief in Support of its Cross-Motion for Partial Summary Judgment and Re-

sponse to the Court's Request for Discussion of the Nature of the Government's Breach of Contract at 90 ("[P]olicies or strategic objectives decided upon and announced by Coast after the April 1987 contract, including those articulated in the December 1987 Strategic Plan … have little if any relevance to what the parties actually foresaw or reasonably should have foreseen at the time of contracting."). The court agrees with the consistent position of plaintiff and the alternative position of defendant that documents created by plaintiff in December 1987 are not relevant to the foreseeability question. However, there is ample uncontroverted evidence, including documents created by plaintiff at or before the time of contracting, to support the finding that leverage was foreseeable.

its capital-to-assets ratio from 8.9% at the end of 1986 to 6.8% at the end of 1987, and to 6.1% at the end of 1988. Def.App. v.5 at 3692. The author of the memorandum found that plaintiff's "assumptions and expectations appear to be reasonable." *Id.* at 3693. Similarly, plaintiff's business plan issued in December 1986 projected a decrease in one capital-to-asset ratio and a very slight increase in another. *Id.* at 3678. The court discussed in its opinion the deposition testimony of several former regulators who testified that leveraging of a capital credit in this situation is foreseeable. Opinion at 29–31. Given defendant's expectation of an increase in leverage, and the other testimony that a sharp decrease in regulatory capital would have foreseeable adverse effects, the court found that plaintiff's damages were foreseeable to defendant. Opinion at 33.

For the foregoing reasons, defendant's motion for reconsideration is DENIED.

IT IS SO ORDERED.