**AAA ENGINEERING & DRAFTING, INC., Appellant,**

v.

**Sheila E. WIDNALL, Secretary of the Air Force, Appellee.**

No. 96–1296.

United States Court of Appeals, Federal Circuit.

Nov. 13, 1997.

J. William Bennett, J. William Bennett, P.C., Portland, OR, argued, for appellant.

Phyllis Jo Baunach, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC argued for appellee. With her on the brief were: Kirk T. Manhardt, Asst. Atty. Gen., and David M. Cohen, Director, and Major Robert Reist, United States Air Force, Arlington, VA.

Before RICH, PLAGER, and LOURIE, Circuit Judges.

PLAGER, Circuit Judge.

AAA Engineering & Drafting, Inc. ("AAA") appeals from a decision of the Armed Services Board of Contract Appeals ("Board") in ASBCA No. 44605, dated Feb-ruary 8, 1996. Because we hold that there was not a final decision by the Board within the meaning of the statute governing review by this court, the court is without jurisdiction to hear this appeal; we dismiss for lack of jurisdiction.

## BACKGROUND

On September 10, 1986, AAA was awarded a negotiated service option contract F34601–86–C–3689 by the United States Air Force ("Government" or "Air Force") to provide for the storage, maintenance, and processing of technical order ("TO") historical and negative files. AAA was required, upon completion of the contract, to "prepare for shipment, deliver f.o.b. origin, or dispose of the Government property as may be directed or authorized by the Contracting Officer."

Contract line item number ("CLIN") 0017 also required AAA to develop a computerized negative storage record keeping system and to provide a modem connection. The object of the system was to replace an existing manual card locator file. The contract required that the resulting system software be compatible with an Air Force "Z–248" computer running "MS DOS," "Word Star Professional Wordprocessing Software," and "DBase III (Data Base Management Software)." It was AAA's responsibility to ensure that the software "will interface with Air Force capabilities" so that the Air Force "can easily maintain [the system] at the conclusion of the contract."

Following contract award, AAA subcontracted with Mr. Steve Nimmo of SuperSoft, Inc., to write the system software. Rather than use DBase III, as apparently required under the contract, Mr. Nimmo suggested to AAA that he be allowed to use Data Flex as the database management program. AAA approved this substitution and accordingly purchased a "single use" license. This license, however, did not give AAA the right to copy or give Data Flex to a third party. The Air Force's technical personnel assented to this substitution. Even though AAA knew that such personnel were without authorization to amend the contract, AAA did not seek approval from the contracting officer ("CO").

On March 23, 1987, AAA submitted a "DD–250 (Material Inspection and Receiving Report") invoicing the Air Force for the full bid price of $28,350 for CLIN 0017. The program software was not submitted with the invoice. The Air Force paid the invoice in full. The DD–250 was signed by an authorized government representative, but neither the "PQA" box nor the "ACCEPTANCE" box on that form was checked. At that time, neither the Air Force nor AAA had tested the software on a Air Force Z–248 computer.

AAA was not awarded the follow-on contract. Instead, the contract went to Hebco, Inc. AAA was instructed to deliver all government furnished property ("GFP") to Hebco at a price to be negotiated. In response to these instructions, AAA prepared a fixed price bid to box, pack, and label negative, history, and reproducible files. Subsequently, in an apparent sudden change of mind, the CO informed AAA that the contract already required AAA to furnish the GFP so no additional compensation would be given for these services. AAA refused to comply. After reaching an impasse on the responsibility to move the GFP, the CO informed AAA that government personnel would visit AAA's site to pack and move the GFP. Air Force personnel packed and moved the GFP from AAA's facility on December 19, 1989.

On February 21, 1990, the CO requested that AAA turn over the computerized record keeping system software designed under CLIN 0017. AAA complied with this request. The Air Force acknowledged receipt of a telephone modem, seventeen disks containing the software and corresponding data on February 27, 1990. When the Air Force attempted to run the software on their AF Z–248, however, they were unable to do so. Accordingly, the CO informed AAA that the software was not compatible with the AF Z–248 as required by the contract. AAA was then asked to identify the equipment used to develop the software. It was in response to this inquiry that AAA first informed the Air Force that AAA had used Data Flex instead of DBase III. All subsequent efforts to run the system software failed. The CO ultimately returned the disks to AAA and demanded a full refund of the money paid for the software. On March 6, 1992, effective February 4, 1992, the Air Force awarded Hebco a contract to develop replacement software complying with CLIN 0017.

On May 18, 1992, the CO issued a "final decision" stating that AAA was liable for the cost of repurchasing software conforming to CLIN 0017. The CO's final decision also indicated that the Air Force intended to hold AAA liable for the costs of packing and moving the GFP. The total sought by the Air Force was $121,809.50. AAA appealed the CO's final decision to the Board.

The Board found AAA liable on both counts. The Board found that the system software did not comply with the contract because the software was not compatible with Air Force computers. Moreover, the Board rejected AAA's argument that the Air Force waived the interface requirement. The Board similarly rejected AAA's argument that it was not contractually obligated to box and move the GFP. Accordingly, the Board denied AAA's appeal on this issue as well. Certain elements of AAA's appeal were sustained.

In the opening paragraph of the Board's opinion, it stated that "[o]nly entitlement will be decided." True to its word, the Board held that "[w]ithout addressing quantum, the Government is entitled to re-coup its payment for the rejected software provided under CLIN 0017." With respect to the GFP claim, the Board held that "without addressing quantum, the Government is entitled to remuneration of the excess costs incurred to move the GFP." Accordingly, the Board "remanded to the parties to negotiate quantum." AAA appeals from the Board's decision.

## DISCUSSION

As a preliminary matter, the Government questions our jurisdiction over this appeal. We therefore consider this matter first. Because we agree with the Government on this point, our inquiry ends there as well.

We have jurisdiction over this appeal, if at all, under 28 U.S.C. § 1295(a)(10) (1994). That section provides for our appellate review "of an appeal from a *final decision* of an agency board of contract appeals pursuant

to section 8(g)(1) of the Contract Disputes Act of 1978. . . ." (Emphasis added.) The question in this case then is whether the decision of the Board is "a final decision."

The doctrine of "finality," under the historic federal rule, has generally allowed appellate review only when a judgment has wholly disposed of a case, adjudicating all rights and ending the litigation on the merits. *See, e.g., Flanagan v. United States,* 465 U.S. 259, 263, 104 S.Ct. 1051, 1053–54, 79 L.Ed.2d 288 (1984). Thus a judgment encompassing both liability and damages, as a general rule, has been the prerequisite of appellate review. *See Teller Envtl. Sys., Inc. v. United States,* 802 F.2d 1385, 1388 (Fed.Cir.1986).

The court in *Teller* noted that, unlike many contract dispute cases in which the CO denies a claim and therefore never addresses the question of quantum, that case involved a CO decision adverse to the contractor on both entitlement and quantum. *Id.* at 1389. The Board, on appeal from the CO's decision, affirmed the liability determination, but "remanded" the matter to the parties to settle the amount of damages. *Id.* The court held that this "remand" did not constitute a transfer or a cessation of the Board's jurisdiction over the case. *Id.* at 1390. Since the Board had failed to determine finally the amount of the contractor's liability, the decision of the Board lacked the finality required by 28 U.S.C. § 1295(a)(10). *Id.*

This case is on all fours with *Teller.* In the case now before us, the CO decided both issues of liability and quantum. The Board assumed jurisdiction over both yet decided only liability, remanding the case to the parties to work out quantum. Because the issue of quantum has yet to be resolved, the Board's decision is not final. Accordingly, we are without jurisdiction to hear the appeal.

AAA concedes as much regarding its claim for packing and shipping the GFP. It argues, however, that under *Orlando Helicopter Airways, Inc. v. Widnall,* 51 F.3d 258 (Fed.Cir. 1995), its CLIN 0017 claim is separately appealable. In *Orlando Helicopter,* the contractor sought to recover from the government costs which it had incurred as a result of a government investigation of safety viola-

tions. The Board held that law enforcement investigations not initiated by the contracting officer are sovereign acts and the costs incurred by the contractor in responding to a criminal investigation were not recoverable. The Board granted the Government's summary judgment motion on that issue. *Id.* at 260.

However, the Board also determined that the contractor might be able to recover under the Changes clause of the contract those costs attributable to a required technical review and a stop work order issued by the CO. On that issue the Board denied the Government's summary judgment motion; the question of ultimate liability and quantum was not addressed. *Id.* The contractor appealed the Board's decision to this court.

In its opinion, this court raised *sua sponte* the issue of its own jurisdiction in light of the finality question. The court acknowledged that only one monetary claim had been made by the contractor, and that the Board continued to assert jurisdiction over a part of the same claim then on appeal. *Id.* at 261. Nevertheless, the court concluded that it had jurisdiction over the case, and that it would decide the question of whether summary judgment had been properly granted on the sovereign act issue. *Id.*

The court explained this conclusion by noting that the Government's sovereign acts defense "is an issue wholly separate and distinct from any issues which may remain before the Board." *Id.* The court considered that by comparing the inconvenience and cost of piecemeal review with the danger of denying justice by delay, judicial review under the circumstances would not disrupt the orderly process of adjudication. *Id.*

The court in *Orlando Helicopter* correctly observed that the doctrine of finality, when it applies, reflects a judgment regarding the balance between the inconvenience and cost associated with piecemeal review of decisions by a trial forum, with concerns for the denial of justice by delay. In the cases that come before us from the boards of contract appeals, Congress has struck that balance, and decreed that only final decisions will be heard by this court. Whether the court is free to reexamine that balance in individual

cases is not a matter we need address here. It is enough for us to observe that, in the case before us, the issues are typical examples of a contract dispute, they are closely related and integral to the contracted-for performance, and, although entitlement has been determined on both issues, until quantum is also determined there is no way to know whether a genuine dispute remains for appeal.

We conclude that it would be improper for us to consider the question presented on this appeal. To do so would suggest that the historical requirement for finality, expressly imposed by Congress, was subject to individual exception and judicial waiver. We decline to so rule.*

The decision of the Board is not final for purposes of establishing jurisdiction. Accordingly, the appeal is

*DISMISSED.*

## COSTS

The Government is entitled to recover its costs.

---

* This case should be distinguished from those classes of cases in which Congress has created an explicit waiver to the finality rule such as, for example, appeals over orders "granting, continuing, modifying, refusing or dissolving injunctions," 28 U.S.C. § 1292(a)(1) (1994), certified appeals, *id.* at 1292(b), and appeals from judg-

ments in patent infringement cases that are "final except for an accounting," *id.* at 1292(c)(2); *Johannsen v. Pay Less Drug Stores Northwest, Inc.*, 918 F.2d 160, 162 (Fed.Cir.1990).