**KINETIC BUILDER'S INC., Appellant,**

v.

**F. Whitten PETERS, Secretary of the Air Force, Appellee.**

**No. 00–1065.**

United States Court of Appeals, Federal Circuit.

Sept. 25, 2000

Richard B. Campbell, Carlton, Fields, Ward, Emmanuel, Smith, & Cutler, P.A., of Tampa, Florida, for appellant.

Kevin W. McArdle, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for appellee. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Kirk T. Manhardt, Assistant Director.

Before RADER, SCHALL, and LINN, Circuit Judges.

LINN, Circuit Judge.

Kinetic Builder's Inc. ("Kinetic") appeals from the consolidated reconsideration decision of the Armed Services Board of Contract Appeals ("Board" or "ASBCA"). *See Kinetic Builders, Inc.,* Nos. 51012 and 51611, 99–2 B.C.A. (CCH) ¶ 30,450, 1999 WL 476692 (ASBCA July 6, 1999). In that decision the Board denied Kinetic's claim for extended job site overhead costs for the delay in contract completion that was caused by the Department of the Air Force's ("Air Force") handling of a sewage back-up. In addition, the Board denied Kinetic's claim seeking a time extension and reimbursement for extended job site overhead costs caused by the alleged Air Force delay in promulgating a solution to the problem of a defective restroom layout. Because the Board's factual findings are supported by substantial evidence, we affirm.

## BACKGROUND

The Air Force awarded Kinetic contract no. F08620–94–C0050 for the alteration of a building at Hurlburt Field, Florida. The contract was for a fixed price of $243,121.00 and the contract completion date was set for 268 calendar days after receiving notice to proceed. The Air Force issued the notice to proceed on October 20, 1994. Thus, the completion date was set for July 18, 1995. By a modification dated May 5, 1995, the parties agreed to an increase in the contract price and to extend the completion date to January 23, 1996. The Government took beneficial occupancy of the building on March 1, 1996, thirty-seven days after the scheduled completion date. In view of Federal Acquisition Regulation ("FAR") 52.232–5 paragraph (e), which was incorporated into the contract, the Air Force withheld $4,775.70 in contract payments as liquidated damages for late completion and credit for unperformed work.

Pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–612, Kinetic submitted multiple claims to the contracting officer ("CO") for the Air Force seeking payment of $7,724.28 for additional costs incurred as a result of defective specifications as well as government-caused delays. The CO determined that Kinetic would be permitted: (1) twenty days of delay due to the Air Force's delay in handling a sewer backup; (2) a seven day performance extension, as previously agreed upon, due to work accomplished under Modification No. P00002 directing Kinetic to perform restroom changes and additional work specified in Addendum 6 to the contract; and (3) three days of delay because of delay by the Air Force in bringing forth corrective action due to a defective restroom layout. In view of these excusable delays, the CO only assessed Kinetic with a seven day liquidated damage charge, i.e., thirty-seven days total delay minus thirty days excusable delay, in the amount of $693.00.

In addition, the CO found that Kinetic was not entitled to extended overhead costs because it had contributed to the thirty-seven day delay. The CO also found that Kinetic was entitled to an equitable adjustment of $687.93 for the work added by Modification No. P00002, but that Kinetic was not entitled to additional compensation for painting certain rooms because the work was required by the contract, and therefore, was not additional work. Finally, the CO found that the Air Force was entitled to a contract price reduction of $435.00 for Kinetic's failure to paint exposed gas piping in accordance with the contract. In view of the foregoing, the CO calculated that Kinetic was owed $4,335.63 of the $4,775.70 that the Air Force withheld as liquidated damages and credit for unperformed work. Unhappy with the result of the CO's decision, Kinetic timely appealed to the Board.

The Board addressed Kinetic's multiple claims in two separate decisions. The first decision covered Kinetic's claims of entitlement to: (1) a time extension for Air Force delay in dealing with the sewer back-up, (2) an increase in contract price for additional painting, and (3) extended overhead costs due to the Air Force delay in dealing with the sewer back-up. The first decision also covered the Air Force's claim for a contract price reduction for unperformed work. The second decision covered: (1) Kinetic's claims for entitlement to a time extension for Air Force delay in promulgating a solution to the problem of the defective restroom layout, (2) the accompanying extended job site overhead costs, (3) an equitable adjustment for work added by Modification No. P00002, and (4) an accompanying time extension for carrying out the work added by Modification No. P00002.

In the first decision, the Board determined that Kinetic was entitled to seventeen days of excusable delay out of the thirty-seven days of completion delay because of the Air Force's delay in handling the sewer back-up. The Board also determined that Kinetic was entitled to an equitable adjustment for overhead costs due to that delay. The Board, like the CO, also

determined that Kinetic was not entitled to an increase in the contract price for the alleged extra painting because that painting was not additional work, but rather work that was required by the contract. Further, the Board, like the CO, found that the Air Force was entitled to a price reduction of $435.00 for Kinetic's failure to paint exposed piping as required by the contract. The Board then determined the maximum amount of money that the Air Force properly could have withheld from Kinetic pursuant to FAR 52.232–5 if none of the contract delay were excusable to Kinetic. Finally, the Board concluded that because seventeen days of delay was excusable to Kinetic and Kinetic was entitled to an equitable adjustment for costs associated with that delay, the maximum amount it had just calculated needed to be further reduced. Consequently, the Board referred that issue of quantum to the parties.

In the second decision, the Board concluded that Kinetic did not seek a time extension for carrying out the work required by Modification No. P00002. In addition, the Board concluded that Kinetic was not entitled to a time extension or accompanying overhead costs for alleged Air Force delay regarding the promulgation of a solution to the defective restroom layout. According to the Board, Kinetic failed to establish that any Air Force delay in solving the defective restroom layout caused delay in Kinetic's completion of the contract or caused Kinetic to incur additional overhead costs. Furthermore, the Board concluded that while Kinetic was entitled to an equitable adjustment for the work added by Modification No. P00002 and the Air Force was entitled to a credit against the price for work deleted by that modification, the issue of quantum for those claims should be referred to the parties for negotiation.

Kinetic moved for reconsideration of portions of these two Board decisions. The Board consolidated these portions into a single decision for purposes of reconsideration. In its consolidated reconsideration decision, the Board affirmed all parts of its second decision but modified parts of its first decision. First, the Board found that while the Air Force did not take beneficial occupancy of the building until March 1, it was on notice of substantial completion of the contract as of February 27. Thus, the total contract delay was thirty-five days not thirty-seven. Second, the Board found that while seventeen days of the contract delay was excusable as to Kinetic due to the Air Force's delay in handling the sewer back-up, Kinetic did not test the fire alarm system until February 26, 1996, and did not notify the Air Force of the results of this test until February 27, 1996. Thus, the Board concluded that Kinetic, as well as the Air Force, was responsible for contract delay. In view of the foregoing, the Board denied Kinetic's entitlement to overhead costs for the sewer back-up delay because the record did not provide a basis for apportioning the overhead costs incurred as a result of the Air Force's delay and the overhead costs incurred as a result of Kinetic's delay.

Despite denying the overhead costs due to the sewer back-up delay because of the concurrence with Kinetic's delay, the Board found that Kinetic was nevertheless entitled to damages for the seventeen days of Air Force delay in dealing with the sewer back-up. However, the Board also noted that the Air Force was entitled to damages for the remaining eighteen days of delay caused by Kinetic in completing the contract. The Board then calculated the maximum payment that the Air Force could properly have withheld from Kinetic pursuant to FAR 52.232–5 in view of the foregoing findings as to delay by the Air Force and by Kinetic and the contract price reduction for the painting of the pipes that was not performed by Kinetic. That sum was determined to be $2,217.00.

Kinetic timely appealed the Board's reconsideration decision to this court.

## DISCUSSION

### I.

██ "[E]very federal appellate court has a special obligation to satisfy itself . . .

of its own jurisdiction." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (internal quotations and citations omitted); *see also Helfgott & Karas, P.C. v. Dickenson*, 209 F.3d 1328, 1333, 54 USPQ2d 1425, 1428 (Fed.Cir.2000). Thus, we first address the question raised by the government of our jurisdiction to hear this appeal.

■■■ We have exclusive jurisdiction "of an appeal from a final decision of an agency board of contract appeals pursuant to section 8(g)(1) of the Contract Disputes Act of 1978." 28 U.S.C. § 1295(a)(10) (1994). The CDA provides that all contract claims must first be submitted to the CO for decision. *See* 41 U.S.C. § 605(a) (1994); *Dewey Elecs. Corp. v. United States*, 803 F.2d 650, 654 (Fed.Cir.1986). After receiving an adverse decision from the CO, the contractor may appeal that decision to the appropriate agency board of contract appeals. *See* 41 U.S.C. § 607 (1994); *Dewey*, 803 F.2d at 654. In view of the foregoing procedures, the breadth of issues covered in the CO's decision determines the extent of the contractor's right of appeal and the board's jurisdiction. *See Dewey*, 803 F.2d at 655.

■■■ "The CDA recognizes that a single government contract may give rise to more than one claim." *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir.1990) (citing 41 U.S.C. § 609 (1988)). To determine whether the contractor has presented a fragmented single claim or separate claims, the court must assess the operative facts. *See id.* "If the court will have to review the same or related evidence to make its decision, then only one claim exists.... On the other hand, if the claims as presented to the CO will necessitate a focus on a different or unrelated set of operative facts as to each claim, then separate claims exist." *Id.*

Kinetic sought before the CO to be excused for delay in contract completion due to the government's delay in handling the sewer back-up and in providing a solution to the defective restroom layout. Kinetic also sought recovery of extended overhead costs due to the delays in handling the sewer back-up and in providing a solution to the defective restroom layout. Kinetic further sought to be excused for delay in contract completion due to work required by Modification No. P00002 to correct the defective restroom layout. Additionally, Kinetic sought an equitable adjustment of the contract price for work required by the Air Force's solution to the defective restroom layout, as well as additional compensation for painting certain rooms. The Air Force added a claim before the CO that it was entitled to credit for Kinetic's failure to paint certain pipes required by the contract. It is clear that not all of the claims presented to the CO involve a common set of operative facts.

The record reflects that the CO determined issues of liability and quantum for each of the claims Kinetic presented. Kinetic appealed both liability and quantum for each of these claims to the Board. The Board decision, therefore, considered these multiple claims on both the issue of liability and the issue of quantum.

It is the government's position that the Board's decision is not final because it did not resolve all of the issues before it that were addressed by the CO. Specifically, the government contends that the Board referred the issue of quantum regarding (1) the amount due Kinetic for Modification No. P00002, and (2) the credit due the Air Force for Kinetic's failure to paint certain pipes to the parties for negotiation. In other words, the government contends that the Board remanded two quantum issues that were before the CO and over which the Board had assumed jurisdiction.

■■■ Finality classically has required that the appealed order end the litigation on the merits and leave nothing for the court to do but execute judgment. *See AAA Eng'g & Drafting, Inc. v. Widnall*, 129 F.3d 602, 604 (Fed.Cir.1997); *Teller Envtl. Sys., Inc. v. United States*, 802 F.2d 1385, 1388 (Fed.Cir.1986); *Dewey*, 803 F.2d at 653. This rule ordinarily requires

that a party "raise all claims of error in a single appeal following final judgment on the merits." *Teledyne Cont'l Motors v. United States,* 906 F.2d 1579, 1581 (quoting ·*Flanagan v. United States,* 465 U.S. 259, 263, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (internal quotations omitted)). This doctrine embodies the policy of avoiding "piecemeal litigation and delays caused by appeals of non-final decisions." *Teller,* 802 F.2d at 1388. With the foregoing in mind, it is undisputed that where the CO is presented with a single claim asserting both liability and quantum, and where a subsequent appeal of that claim to the Board results in a remand to the parties to negotiate quantum, the Board's decision is not final. *See id.* at 1389–90. Likewise, where the CO is presented with multiple claims asserting both liability and quantum, and where a subsequent appeal of those claims to the Board only determines the issue of entitlement on those multiple claims, the Board's decision is not final. *See AAA Eng'g,* 129 F.3d at 603–05.

Although this classical finality requirement is strictly imposed on district court decisions, it is not imposed with exact congruence on Board decisions. *See Dewey,* 803 F.2d at 654; *see also Garrett v. Gen. Elec. Co.,* 987 F.2d 747, 751 (Fed.Cir.1993); *Orlando Helicopter Airways, Inc. v. Widnall,* 51 F.3d 258, 260 (Fed.Cir.1995). We have recognized that by comparing the inconvenience and cost of piecemeal review with the danger of denying justice by delay, judicial review under certain circumstances would not disrupt the orderly process of adjudication. *See Orlando,* 51 F.3d at 261; *Dewey,* 803 F.2d at 655–56; *cf. AAA Eng'g,* 129 F.3d at 604 (citing to *Orlando,* 51 F.3d at 261, but finding that the orderly process of adjudication would be disrupted under the circumstances before it). This recognition derives from the acceptance that administrative proceedings under the CDA are intended to be swift and inexpensive. *See Dewey,* 803 F.2d at 656 (noting that "the legislative history of the CDA indicates that Congress desired to restore, to the extent possible,·the original purpose of the boards of contract ap-

peals 'to provide a swift, inexpensive method of resolving· contract disputes.'" S.Rep. No. 1118, 95th Cong., 2d. Sess., *reprinted in* 1978 U.S.C.C.A.N. 5235, 5246.).

▮ In view of the foregoing, finality of a Board decision can· be found "where the process of the Board decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and where rights or obligations have been determined or legal consequences will flow from the agency action." *Id.* at 654 (quoting *ICC v. Atlantic Coast Line R. Co.,* 383 U.S. 576, 602, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1966) (internal quotations omitted)). Thus, we have held that where the CO is presented with multiple entitlement claims not based on a common or related set of operative facts and subsequent appeal of those claims to the Board results in an adverse decision on one or more claims and a remand of one or more other claims for resolution of quantum, the Board decision on the non-remanded claims is deemed final in the sense of conferring appellate jurisdiction on this court. *See id.* We have so held because preventing· final resolution of the contractor's entitlement under one claim until quantum is determined by the CO on other liability claims would "tend to reduce the efficiency and flexibility generally associated with administrative proceedings." *Id.* at 656.

In the case at bar, the government proposes that final resolution of a contractor's entitlement under one claim and quantum owed therefore should await a determination of quantum by the CO on· other independent claims of entitlement decided adversely to the government. This rule, like the one the government proposed in *Dewey,* would reduce the efficiency and flexibility generally associated with administrative proceedings. Additionally, like the rule the government posed in *Dewey,* it would frustrate "Congress' obvious desire in the [Contract Disputes Act] to provide

an expeditious forum for resolving contract disputes." *Id.*

■ We think the better rule is that where separate claims by definition focus on a different or unrelated set of operative facts, and where issues of both liability and quantum have been assumed and determined, the decision of the Board as to the non-remanded claims is to be deemed final for the purpose of conferring appellate jurisdiction on this court. For such claims, legal consequences flow from the Board's action, and the process of decision-making as to those separate claims has reached a stage where judicial review will not disrupt the orderly process of adjudication. *See id.* at 653–54; *Orlando,* 51 F.3d at 261. Moreover, this rule promotes the Congressional desire in the CDA to provide an expeditious forum for resolving contract disputes. *See Dewey,* 803 F.2d at 656.

In this case the Board identified six claims in its two decisions. These were: (1) Kinetic's entitlement to a time extension and extended overhead for Air Force delay in dealing with the sewer back-up; (2) Kinetic's entitlement to an increase in contract price for additional painting; (3) Kinetic's entitlement to a time extension and extended overhead for Air Force delay in promulgating a solution to the problem of the defective restroom layout; (4) Kinetic's entitlement to an equitable adjustment for work added by Modification No. P00002 offset by the work deleted pursuant to the modification; (5) Kinetic's entitlement to a time extension for carrying out the work required by Modification No. P00002, and (6) the Air Force's entitlement to a credit for unperformed painting work by Kinetic. The government asserts that two quantum claims were remanded. The first claim it contends was remanded is the quantum owed Kinetic for work it did pursuant to Modification No. P00002, i.e., claim 4. The second claim the government contends was remanded is the quantum owed the Air Force for unperformed painting of pipes by Kinetic, i.e., claim 6.

The government is not correct that the Board remanded the quantum owed for claim 6. In the Board's consolidated reconsideration decision, it determined that Kinetic owed the Air Force $435.00 for unpainted piping. Thus, the only unresolved issue of quantum remanded by the Board is the amount due Kinetic for the work it was required to complete under Modification No. P00002 and the offset to that amount for work deleted by that modification, i.e., claim 4. The claim for an extension of time for work required by Modification No. P00002, which the Board decided, and the claim for an equitable adjustment to the contract price for work required by Modification No. P00002, which the Board remanded, do not involve proof of a common set of operative facts, though they both relate to Modification No. P00002. In addition, the single remanded quantum claim clearly is wholly separate and distinct from the claims of liability and quantum decided by the Board that do not relate to Modification No. P00002. Moreover, unless an irreconcilable dispute arises as to the quantum due Kinetic for Modification No. P00002, that matter of quantum may not even be seen again by the CO, much less the Board. *See Dewey,* 803 F.2d at 656 (noting that when a claim is remanded by the Board for quantum resolution, that claim is typically not seen by the Board again). Therefore, we discern no disruption to the administrative process by deeming the claims determined on both liability and quantum to be ripe for appeal.

For the foregoing reasons, we hold that we have jurisdiction under the CDA over Kinetic's appeal of the Board's decision on liability and quantum, denying the following claims by Kinetic: (a) its claim for extended job site overhead costs for the delay in contract completion that was caused by the Air Force's handling of a sewage back-up (claim 1); (b) its claim seeking a time extension and reimbursement for extended job site overhead costs caused by the alleged Air Force delay in promulgating a solution to the problem of

the defective restroom layout (claim 3); and (c) its claim seeking a time extension for carrying out the work required by Modification No. P00002 (claim 5).

## II.

Turning now to the merits, the CDA dictates the standard this court applies in reviewing Board decisions. *See* 41 U.S.C. § 609(b) (1994). We review questions of law de novo. *See id.* We may not set aside the Board's factual findings, however, unless Kinetic establishes that those findings were either: (1) fraudulent; (2) arbitrary or capricious; (3) so grossly erroneous as to necessarily imply bad faith; or (4) not supported by substantial evidence. *See id.*

Kinetic contends that the Board's consolidated reconsideration decision is in error for two reasons. The first error allegedly arises out of the Board's determination regarding claim 1, namely that Kinetic is not entitled to extended overhead due to the Air Force's delay in dealing with the sewage back-up. The second error allegedly arises out of the Board's determination regarding claims 3 and 5, namely that Kinetic is not entitled to: (1) a time extension and extended overhead due to the Air Force's alleged delay in providing a solution to the defective restroom layout, or (2) a time extension to accomplish the work required by Modification No. P00002 to carry out the Air Force's solution to the defective restroom design. We address each of these alleged errors, in turn.

## A.

As to the first error, Kinetic argues that contrary to the Board's determination, testing of the fire alarm system has no bearing on substantial completion of the contract. Kinetic contends that all contract work, other than the carpet installation, was completed as of February 4, 1996, including installation of the fire alarm system, which was capable of being successfully tested at that time. Furthermore, Kinetic contends that the record reflects that it was prepared to begin car-

pet installation on February 1, and the only reason this installation was not finished as of this date was because of the Air Force's delay in dealing with the sewage back-up.

Kinetic asserts that had it not been for the Air Force's delay in dealing with the sewage back-up, it could have completed carpet installation by February 4 and, thus, all contract work would have been completed by that date as well. Thus, it is Kinetic's position that because all work under its responsibility and control was completed by February 4, it is not responsible for any damages beyond February 4. Moreover, since the Air Force took beneficial occupancy on March 1 and the Air Force delayed dealing with the sewage back-up for seventeen days, Kinetic contends that it is entitled to a total time extension on the contract of twenty-six days.

Whether a contract has been substantially completed is a question of fact. *See Thoen v. United States*, 765 F.2d 1110, 1115 (Fed.Cir.1985). Kinetic has not alleged fraud or bad faith. Therefore, the question before us is whether the Board's finding that the contract was not substantially completed until February 26, 1996 was arbitrary, capricious, or not supported by substantial evidence. *See* 41 U.S.C. 609(b).

A project should be considered substantially completed when it is capable of being used for its intended purpose. *See Franklin E. Penny Co. v. United States*, 207 Ct.Cl. 842, 524 F.2d 668, 677 (1975). In determining whether the project is capable of being used for its intended purpose, it is necessary to consider the specific provisions laid out in the contract. *See id.* Thus, it is first necessary to identify the contract provisions defining the parties' expectations as to the owner's reasonable use of its facility. A finding of substantial completion is only proper where a promisee has obtained, for all intents and purposes, all the benefits it

reasonably anticipated receiving under the contract. *See id.* ("[T]he doctrine [of substantial completion] should not be carried to the point where the non-defaulting party is compelled to accept a measure of performance fundamentally less than had been bargained for.").

Paragraph nineteen of § 16721 of the contract entitled "Fire Alarm and Smoke Detection Systems" provides in part that:

After all equipment for this system has been installed and made operational, and at a time directed by the Contracting Officer, the contractor shall conduct tests to demonstrate that the installation and the system operation is in accordance with the plans and specification.

Accordingly, in addition to bargaining for operational installation of the fire alarm system, the Air Force bargained for testing of that system to demonstrate that the system was operational. Clearly, fire alarm testing was an important requirement to the Air Force before the building could be used for its intended purpose. Consequently, the determination of when the work on the fire alarm system was substantially complete requires more than evidence that the fire alarm system was installed, operational, or capable of being successfully tested. So, Kinetic's argument that no evidence suggests that the fire alarm system was not installed, operational, or capable of being successfully tested as of February 4, 1996 is irrelevant to determining substantial completion of the contract.

The evidence is uncontested that fire alarm testing did not occur until February 26, 1996, and that the Air Force was not notified of the successful testing until February 27, 1996. Since the contract requires a test to demonstrate that the installation and the system operation is in accordance with the plans and specifications, it follows that the Air Force must be notified of the successful completion of the test prior to it being able to take beneficial occupancy. Thus, we conclude that the Board's finding that substantial completion did not occur until February 26 is not arbitrary, capricious, or unsupported by substantial evidence. Moreover, the Board's finding as to when the Air Force was notified so as to be able to take beneficial occupancy is also supported by substantial evidence.

Kinetic's claim of entitlement to a specified amount of excusable contract delay depends on this court determining that the Board's finding as to substantial completion was erroneous. Because we do not find that to be the case, we do not reach Kinetic's claim that it is entitled to twenty-six days of damages for alleged government-caused delay in dealing with the sewage back-up.

### B.

We now turn to the second error alleged by Kinetic regarding claims 3 and 5. Kinetic contends that the evidence establishes that its progress in completing the contract was delayed because of the Air Force's delay in providing a solution to the defective restroom design. It is Kinetic's position that, contrary to the Board's finding, it is entitled to a contract extension for this government-caused delay.

It is also Kinetic's position that it is entitled to a time extension for the work required by Modification No. P00002. Kinetic contends that, contrary to the Board's finding, the evidence establishes that it repeatedly sought an extension of time to accomplish the work directed by Modification No. P00002. Moreover, Kinetic contends that, contrary to the Board's finding, it considered its schedule to have been affected by the work directed in that modification.

 A contractor seeking to prove the government's liability for a delay has the burden of proving the extent of the alleged delay, the causal link between the government's wrongful acts and the delay in the contractor's performance, and the alleged harm to the contractor for the delay. *See Essex Electro Eng'rs, Inc. v. Danzig*, 224 F.3d 1283, 1295 (Fed.Cir.

2000). In establishing the causal link, the contractor must show that the government's actions affected activities on the critical path of the contractor's performance of the contract. *See id.*, at 1295–96; *Sauer Inc. v. Danzig*, 224 F.3d 1340, 1345–46 (Fed.Cir.2000). Thus, in this case, the Board correctly stated that Kinetic had the burden of establishing that the alleged Air Force delay in promulgating a solution to the defective restroom layout caused Kinetic to extend the completion time of the contract and to incur extended site overhead costs.

### 1.

 Kinetic contends that the Contract Progress Schedule indicates that the defective design and the Air Force's slow response thereto caused it to go from 4.2% ahead of schedule to 5.8% behind schedule. Thus, Kinetic contends that the foregoing clearly indicates that its progress had been negatively affected by the defective design. Moreover, Kinetic contends that the progress reports for drywall work, namely going from 60% completion of the work at the time the Air Force was notified of the defect to 14% behind schedule when the Air Force issued Modification No. P00002 to solve that defect, also evidences that the defect caused Kinetic's delay. Consequently, Kinetic contends that the Board's finding that it failed to establish that the delay caused it to extend the completion of the contract is not supported by substantial evidence. Kinetic also contends that the evidence of progress on the drywall work at least entitles it to a contract extension to restart and complete the drywall work.

These very same arguments were proffered to and dismissed by the Board. Specifically, the Board noted that the mere fact that the progress rate declined between the time that Kinetic notified the Air Force about the restroom design defect to the time that the Air Force corrected that defect does not in and of itself establish a causal connection between the defect and the slowing of the progress rate. The Board noted that the record indicates that there was other drywall installation and other work that could have been completed, but was not, during the time period the defective restroom design was being resolved. Moreover, the Board noted that 0.7% of the drywall work was not completed until the last week in December, which was long after resolution of the design defect on November 20. The Board also found that Kinetic failed to show that the design defect itself delayed or prevented any drywall work.

In view of the evidence noted by the Board, we cannot say that the Board erred in determining that Kinetic did not establish that the Air Force's delay in correcting the defective restroom design caused Kinetic's overall slowing of progress or even caused its progress on drywall installation to be slowed. In other words, there is substantial evidence of record to support the Board's factual finding that Kinetic has not satisfied its evidentiary burden of causal connection.[1]

### 2.

 Kinetic also contends that the finding that it is not entitled to a time extension for the work required by Modification No. P00002 is not supported by substantial evidence.

Kinetic contends that the Board's finding that it must have believed that the schedule had not been affected by the work directed in Modification No. P00002 be-

---

1. We make no findings of fact but simply note that the record contains additional evidence not mentioned by the Board regarding the following total progress rates: (1) as of June 18, 1995 Kinetic was 8.5% ahead of schedule; (2) as of June 25 Kinetic was 12% ahead of schedule; (3) as of July 2, Kinetic was 10% ahead of schedule; (4) as of July 9 Kinetic was 8% ahead of schedule; (5) as of July 16 Kinetic was 7% ahead of schedule; (6) as of July 23 Kinetic was 5% ahead of schedule; (7) as of July 30 Kinetic was 4.5% ahead of schedule; (8) as of August 6 Kinetic was 5% ahead of schedule; and (9) as of August 13 Kinetic was 4.2% ahead of schedule.

cause it did not seek a time extension for accomplishing that work is contrary to the evidence. In particular, Kinetic asserts that on three separate occasions it requested a seven-day extension of time. Moreover, Kinetic points out that the CO's decision recognized that Kinetic negotiated a seven-day time extension for this work.

Each of these arguments was made to and rejected by the Board. The Board noted that none of the three occasions noted by Kinetic in requesting time extensions in fact referred to added performance time resulting from work required by Modification No. P00002. The evidence on this point is clear, and we agree with the Board's evaluation of these requests.

Moreover, the Board noted that there was no evidence in the record substantiating the statement in the CO's decision that a seven-day extension of time had been previously agreed upon. The Board, citing *Wilner v. United States*, 24 F.3d 1397, 1401 (Fed.Cir.1994), noted that the findings of fact in the CO's decision are not entitled to any deference by the Board and, thus, the Board is not bound by the CO's decision. The Board's statement of the law in this regard is correct.

In view of the foregoing, we hold that the Board's finding that the evidence of record did not establish Kinetic's entitlement to an extension of performance time as the result of work required by Modification No. P00002 is supported by substantial evidence.

## CONCLUSION

The Board's reconsideration decision on the issues appealed by Kinetic, and for which a decision had been made on liability and quantum, is final for purposes of establishing our jurisdiction to hear Kinetic's appeal. For the reasons set forth in this opinion, we affirm the Board's decision that Kinetic is not entitled to: (1) extended job site overhead costs for the delay in contract completion that was caused by a sewage back-up; (2) a time extension and reimbursement for extended job site overhead costs for the alleged delay in promulgating a solution to the problem of a defective restroom layout; and (3) a time extension for performance of the work required by Modification No. P00002.

*AFFIRMED.*