## ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
UNIT Company ) ASBCA No. 60581
)
Under Contract No. W911KB-07-D-0014 )

APPEARANCE FOR THE APPELLANT: Michael A. Brain, Esq.
　Law Offices of Royce & Brain
　Anchorage, AK

APPEARANCES FOR THE GOVERNMENT: Thomas J. Warren, Esq.
　Acting Engineer Chief Trial Attorney
　Carl F. Olson, Esq.
　Kyle B. Davis, Esq.
　Engineer Trial Attorneys
　U.S. Army Engineer District, Alaska

### OPINION BY ADMINISTRATIVE JUDGE NEWSOM ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Before the Board is the government's motion for summary judgment. Appellant, UNIT Company (UNIT), alleging defective specifications, seeks recovery of the costs incurred to design, furnish, and install piping for certain air handling and air conditioning units. In its motion, the government contends that UNIT failed to provide contractually-required notice, which failure, it asserts, bars recovery. For the reasons set forth below, we deny the motion for summary judgment.

### STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The government awarded Task Order 0001, under Contract No. W911KB-07-D-0014 (contract), to UNIT on 11 May 2011.[1] The task order called for the construction of a battle command training center at Joint Base Elmendorf-Richardson in Alaska, for a firm-fixed price of $20,025,555.00. (Revised R4, tab 3 at 84-86)

2. The contract incorporated Federal Acquisition Regulation (FAR) 52.236-21, SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (FEB 1997). The portion of this clause raised in the present motion is subsection (a), which states in relevant part:

---

[1] In describing the facts, we draw justifiable inferences in favor of the non-moving party, as is required when ruling on a summary judgment motion. *CI² Inc.*, ASBCA Nos. 56257, 56337, 11-2 BCA ¶ 34,823 at 171,353.

> In case of discrepancy in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing. Any adjustment by the Contractor without such a determination shall be at its own risk and expense.

(Revised R4, tab 20 at 1434, tab 23 at 5191)

3. UNIT subcontracted with Klebs Mechanical (Klebs) to perform mechanical work, including installation of air supply, distribution, ventilation, and exhaust systems. This work included installation of the air handling units (AHUs) and computer room air conditioning units (CRACs). (App. supp. R4 at 10-13; app. br., Martin aff. ¶¶ 2, 5)

4. The function of an AHU is to heat, cool, and filter building air. AHUs contain coils for heating or cooling. The AHU works by passing air over the coils, then pushing the heated or cooled air through ducts to the building. For this project, the AHUs contained three large coils, one for preheating, one for heating, and one for cooling. To achieve the desired temperatures in the coils, fluid was to be pumped through large-diameter supply and return pipes running from building boilers and air conditioners to the AHU coils. Piping also connected the AHUs to control assemblies in service vestibules. (App. br., Martin aff. ¶¶ 5-6)

5. The function of a CRAC is to maintain the temperature, air distribution and humidity in the network room or data center. CRACs remove hot air from these rooms. For this project, air flowed through connective piping from the CRACs to rooftop fluid coolers, which ejected the hot air outside. (App. br., Martin aff. ¶ 6, Klebs aff. ¶¶ 6, 9)

6. According to UNIT, the contract drawings and specifications lacked certain engineering design information that was necessary to install the AHUs and CRACs. UNIT asserts that the drawings did not show the supply and return piping for the AHUs, did not show piping detail within the service vestibules, did not show how to connect components to the coil control assemblies, did not show connections to other appurtenances, and lacked detail about piping between the CRACs and the rooftop fluid coolers. (App. br., Martin aff. ¶ 7, Klebs aff. ¶¶ 6, 9)

7. UNIT asserts that Klebs interpreted this lack of detail to conclude that the AHU and CRAC suppliers – and not Klebs – would supply the piping and related design engineering for the AHUs or CRACs (app. br., Klebs aff. ¶ 8). During performance, however, those vendors supplied neither the piping nor related design

detail, allegedly leaving Klebs without sufficient information or supplies with which to install them and ensure that they functioned properly (*id.* ¶¶ 10-11).

8. As the project progressed, contractors and subcontractors could pose questions to the government by submitting a "request for information" (RFI) form. Each RFI was dated and numbered, and the government provided a written response. The RFI form stated in bold letters:

> NOTE: THE RFI SYTEM IS INTENDED TO PROVIDE AN EFFICIENT MECHANISM FOR RESPONDING TO CONTRACTOR'S REQUESTS FOR INFORMATION. IT DOES NOT PROVIDE AUTHORITY TO PROCEED WITH ADDITIONAL WORK. IF THE CONTRACTOR CONSIDERS THE RFI RESPONSE A CHANGED CONDITION, PROVIDE WRITTEN NOTICE TO THE CONTRACTING OFFICER'S REPRESENATIVE IN ACCORDANCE WITH CONTRACT PROVISIONS.

(Revised R4, tab 7 at 126)

9. During 2011, 2012, and 2013, UNIT and Klebs submitted multiple RFIs to the government about the AHUs and CRACs (app. br., Martin aff. ¶ 4, ex. 1 at 4-26). At least some of these RFIs posed questions that appear to have concerned the AHU and CRAC piping and engineering design (app. br., Martin aff., ex. 1 at 15, 17, 25). A few examples included RFI Nos. 0227, 0234, 0354, and 0376, quoted below.

10. RFI No. 0227, dated 28 March 2012, stated:

> Information Requested:
> There are no pipe sizes shown from CRACU-1&2 to their corresponding dry coolers. Sheet M241 shows the pipe sizes from AC-1&2 to their dry coolers, but there is nothing documented anywhere in the drawings showing us pipe sizes for CRACU-1&2.

The government response, dated 30 March 2012, stated in relevant part:

> The CRAC system was intended to be Vendor provided for full and complete system. Note 5 in the Computer Room AC Unit Schedule indicates the need for providing a complete and functional system. The Vendor should be

3

consulted for sizing of piping based upon the pumps
selected by the Vendor.

(App. br., Martin aff., ex. 1 at 15)

11. RFI No. 0234, dated 11 April 2012, stated:

There are no piping details in the contract drawings for the
preheat coils and the heating coils for AHU-1, 2, and 3.
Please provide piping details for the preheat coils and the
heating coils for these units.

The government responded on 23 April 2012:

Since the heating coils utilize pressure independent control
valves, Detail A5/M321 applies to their installation.

(App. br., Martin aff., ex. 1 at 17)

12. RFI No. 0353, dated 21 December 2012, stated:

AHU-1&2 may require additional unplanned work efforts
including, but not limited to, condensate lines that stub out
into the service vestibules. The condensate lines appear to
require a p-trap below the services vestibule floor and
would connect together to a main line that would run under
the AHU and exit through the architectural curb. There is
no design/engineering specificity for this effort.

The government responded on 11 January 2013:

This matter will be assigned to Change Item #036, and will
be the subject of future correspondence.

(App. br., Martin aff., ex. 1 at 21)

13. Klebs proceeded to install the AHU and CRAC systems even though Klebs
"lacked complete design engineering." For instance, Klebs' field engineers "piped the
AHU's, CRAC units, and [fluid cooler] units." Klebs said that it proceeded with
installation, notwithstanding the lack of design information, "[f]or a number of
reasons, including a desire to advance key tasks and without delay move the project
towards completion." (Gov't br., ex. 5 at 14)

4

14. Exactly when this installation was performed is unclear,[2] but by January 2013, this work had become the subject of disagreement in written exchanges. In January 2013 correspondence, Klebs criticized the lack of design engineering. The UNIT project manager pushed back and accused Klebs of failing timely to raise these concerns, but also forwarded Klebs concerns to the government. (Gov't br., exs. 1-5) We infer from this correspondence that Klebs likely installed the AHUs and CRACs some time prior to 14 January 2013, and that the government was aware of Klebs' concerns at least by 8 January 2013 (gov't br., ex. 5 at 14). It is plausible to infer that at least some of the 2012 RFIs could have been submitted and responded to prior to installation of the AHUs and CRACs.

15. Klebs then submitted RFI No. 0376, dated 4 March 2013, which stated:

> Nearly 20 RFI's have been written regarding the Air Handling Units for this project. Klebs Mechanical is concerned about the operational performance and design of Air Handling Units (AHU) 1 & 2. The contract documents show few details of the unit sections and the service vestibules. The documents do not show how to connect virtually anything within the services vestibules to the coil piping and the unit heater, including all line and low voltage components. Please provide design engineering for piping, piping appurtenances, piping sizes, fittings, and general system performance information that confirms the installed components will deliver the proper flow rates, heating demands and cooling demands.

The government's response dated 7 March 2013, stated:

> The Government has provided enough information for the contractor to installation [sic] the equipment in question. As confirmed by the TAB Contractor, all flows have been met during preliminary TAB on 3/6/13 Cx meeting. Also, the DOR has reviewed the drawings and takes no exception to the condition. The Government will not respond...via RFI[.] If you feel that this issue still needs to be addressed please followed the applicable FAR Clause (252.243-7002) in your contract and submit via serial letter.

---

[2] The parties do not specify when the installation was performed, and the evidence they cite is opaque (Revised R4, tab 10 at 142-43, 238; app. br., ex. A at 139).

(App. br., Martin aff., ex. 1 at 25)  We infer from this response that the government believed the specifications and drawings were not defective, and that the government would have directed UNIT no differently had this RFI been submitted earlier.

16.  The contracting officer states that RFI No. 0376 was the "first notice sent to the Government that UNIT considered the specifications and drawings for the [AHUs] deficient (gov't br., Mandel aff. ¶ 3).  On 28 July 2014, UNIT submitted a request for equitable adjustment (REA), passed through from Klebs (Revised R4, tab 13).  The contracting officer states that this REA was the first notice she received that UNIT considered the specifications and drawings for the CRAC systems to be deficient.  She does not address why neither the RFIs, nor the January 2013 correspondence, were adequate to apprise her of the alleged defects in the specifications and drawings for the AHUs and CRACs.  (Gov't br., Mandel aff. ¶ 3)

17.  In the REA, UNIT, on behalf of Klebs, sought costs and delay damages for defective specifications.  UNIT/Klebs alleged that the specifications for the CRAC units "did not depict that any connective piping was required to be supplied nor was any design criteria related to this piping depicted."  Additionally, the specifications for the AHUs did not "show any piping" in the service vestibules within which the AHUs were to be installed.  UNIT/Klebs sought costs incurred to supply and install "piping, bracing hangers, insulation, and other components" that were allegedly not identified in the contract specifications and drawings.  They also sought the costs to perform design engineering services allegedly made necessary by the omitted design detail, plus delay damages.  (Revised R4, tab 13 at 542, 546-49)

18.  On 23 September 2015, UNIT notified the contracting officer of its intention to convert the REA into a claim.  It submitted a Contract Disputes Act certification and requested a final decision on the claim in the amount of $1,076,012.  (Revised R4, tab 17 at 545-46)  On 16 October 2015, UNIT submitted a corrected version of the certification (Revised R4, tab 18).

19.  The contracting officer issued a final decision denying the claim on 19 February 2016.  UNIT received the decision on 22 February 2016.  (Revised R4, tab 1 at 15, tab 2)  UNIT timely filed the present appeal on 13 May 2016.

## DECISION

A single issue is presented in the government's summary judgment motion:  is the claim barred on the ground that UNIT allegedly failed to submit to the contracting officer notice of a discrepancy in the specifications or drawings, and await the contracting officer's determination regarding that discrepancy, before installing the AHU and CRAC units?  Relying on FAR 52.236-21(a), SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (FEB 1997), the government argues that UNIT failed

6

to so notify the contracting officer, and this lapse bars the claim (gov't br. at 7-9). It cites language in FAR 52.236-21(a) stating that a discrepancy shall be submitted to the contracting officer for a determination, and "[a]ny adjustment by the Contractor without such a determination shall be at its own risk and expense" (SOF ¶ 2).

UNIT counters, first, that it did submit the matter to the contracting officer when it submitted RFIs in 2012. UNIT argues that those RFIs provided sufficient notice within the meaning of the clause, or, at a minimum, they create a disputed issue of material fact concerning whether or not UNIT provided the required notice, precluding summary judgment. Secondly, UNIT argues that belated submittal of a discrepancy to the contracting officer would not bar the claim unless the government were prejudiced by the lateness, and no prejudice has been established.[3] (App. br. at 8)

We agree with UNIT that a disputed issue of material fact exists as to whether or not UNIT timely submitted the alleged discrepancy to the contracting officer, within the meaning of FAR 52.236-21(a). UNIT presented evidence that the 2012 RFIs noted the absence of design details for aspects of the AHUs and CRACs. These RFIs stated, for example, that "there is nothing documented anywhere in the drawings showing us pipe sizes" for the CRACs, that "[t]here are no piping details in the contract drawings for the preheat coils and the heating coils" for certain AHUs, and that AHUs "may require additional unplanned work efforts" because [t]here is no design/engineering specificity" for certain efforts. (SOF ¶¶ 9-12) In evaluating a summary judgment motion, we draw justifiable inferences in favor of the non-moving party. *BAE Systems San Francisco Ship Repair*, ASBCA No. 58810, 14-1 BCA ¶ 35,667 at 174,590. It is plausible to infer that at least some of these 2012 RFIs were submitted and responded to prior to installation of the units (SOF ¶ 14). Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); *BAE Systems*, 14-1 BCA ¶ 35,667 at 174,588. Because a genuine issue of material fact exists regarding whether appellant promptly submitted discrepancies to the contracting officer we cannot grant summary judgment.

The government argues, however, that these RFIs did not satisfy the requirement in FAR 52.236-21(a). An RFI, it says, is not an appropriate vehicle for communicating a specification discrepancy, because the RFI form states that the government's response does not authorize changed work (gov't br. at 2). The

---

[3] UNIT also argues that the doctrine announced in *United States v. Spearin*, 248 U.S. 132 (1918), makes the government responsible for design defects (app. br. at 13). That argument goes to the merits of the claim and is not ripe for consideration at present.

appropriate vehicle for providing such notice, it asserts, would have been a serial letter to the contracting officer's representative (tr. 8-9).

This argument misses the point. The issue is not whether the government's response to an RFI could change the contract. The issue is whether the information conveyed in the 2012 RFIs was sufficient to notify the government of a discrepancy, within the meaning of FAR 52.236-21(a). On the evidence presented, we see no reason why an RFI would be inappropriate for such communication. We find no contract language, and counsel points to none, that constrains RFI communications (tr. 8). Moreover, controlling authority counsels that the Board (and the government) should not elevate form over substance in evaluating the sufficiency of a contractor's notice. In *Hoel-Steffen Constr. v. United States*, 456 F.2d 760, 767 (Ct. Cl. 1972), the court cautioned against being "too rigid" in demanding that notice take a specific form. Subsequent cases are in accord. *E.g., Grumman Aerospace Corp.*, ASBCA No. 46834 *et al.*, 03-1 BCA ¶ 32,203 at 159,185; *A.R. Mack Construction Co.*, ASBCA No. 50035, 01-2 BCA ¶ 31,593 at 156,139. Although these cases construed different clauses, we see no reason to deviate from this sound principle in the context of FAR 52.236-21, especially in the absence of contract language specifying the form that notice of a discrepancy must take.

The government also argues that the 2012 RFIs did not clearly convey the discrepancy at issue (tr. 8-9). It notes that in January 2013, the UNIT project manager criticized Klebs for raising its concerns too late, a fact which tends to support the government's view that the 2012 RFIs did not convey sufficient information (gov't br. at 8; SOF ¶ 14). This argument amounts to a factual dispute over the meaning of the RFIs. On their face, the 2012 RFIs appear to have described concerns about missing design details (SOF ¶¶ 9-12). Lacking explanation of context and terminology, we cannot be certain what meaning should have been taken from them, but they are enough to create a justifiable inference in UNIT's favor. In deciding a motion for summary judgment, we are not to resolve factual disputes, but ascertain whether material disputes of fact are present. *Appeal of Envtl. Safety Consultants, Inc.*, ASBCA No. 53485, 04-1 BCA ¶ 32,626 at 161,428. A material factual dispute exists regarding the meaning of the RFIs, precluding summary judgment.

In addition, both parties agree that to bar UNIT's claim, the government must demonstrate prejudice from untimely notice (app. br. at 9; tr. 12-13). Indeed, FAR 52.236-21(a) arguably requires that the government show prejudice if it seeks to bar the claim. The clause imposes on the contractor the "risk and expense" of work performed in the absence of obtaining a contracting officer's determination regarding a discrepancy. We clarified in *Kinetic Builders, Inc.*, ASBCA No. 51012, 98-2 BCA ¶ 29,899 at 148,004, *modified on recons.*, 99-2 BCA ¶ 30,450, *aff'd sub nom. Kinetic Builders Inc. v. Peters*, 226 F.3d 1307 (Fed. Cir. 2000), that the risk and expense to be born is the "risk and expense *of an incorrect course of action*" (emphasis added). It

8

follows that if the contractor takes the *correct* course of action, i.e., if it performs the work exactly as the contracting officer would have directed, the government suffers no harm, and the contractor would bear no risk or expense.

The government has presented no evidence of prejudice. It contends it was deprived of an opportunity to "review the alleged defect and elect how it wishes to proceed" prior to installation (gov't reply at 2) but offers no evidence that it wished UNIT to proceed any differently than UNIT actually proceeded. Indeed, its response to RFI No. 0376, which the government claims was the first notice it received of the alleged discrepancies (SOF ¶ 16), was to deny that the specifications were defective. It stated that "[t]he Government has provided enough information for the contractor to install[ ] the equipment in question" (SOF ¶ 15). From that response, we may infer (for purposes of this motion) that the government would have directed UNIT no differently had notice been given earlier (*id*.). The real issue in dispute in this appeal appears not to be the lateness of the contractor's notice, but whether the specifications were defective. In any event, lacking evidence to support an element of its defense, the government has not established that it is entitled to judgment as a matter of law.

## CONCLUSION

The government's summary judgment motion is denied.

Dated: 12 February 2018

ELIZABETH W. NEWSOM
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

9

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60581, Appeal of UNIT Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
